**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

ISABEL GARNETT,

      Plaintiff,

v.                                                                CASE NO.  3:05-cv-1107-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.
_____

## ORDER AND OPINION

This matter is before the Court on Plaintiff's Complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security of the Social Security Administration ("the Commissioner") denying her claim for Disability Insurance Benefits ("DIB"). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by an Order of Reference dated January 6, 2006 (Doc. #7).  The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number).  For the reasons set out herein, the decision is the decision is **REVERSED** and the case is **REMANDED** for further proceedings.

## PROCEDURAL HISTORY

In the instant action, Plaintiff filed two applications for a period of disability and Disability Insurance Benefits under Title II of the Social Security Act.  The first application was filed on December 22, 1998, alleging disability commencing October 1, 1998 (Tr. 107). The second application was filed on February 5, 2003, alleging the same onset date (Tr.

163-65).  The parties do not dispute that Plaintiff's date last insured was December 31, 2003 (Tr. 15 and 26, Finding No. 1).[1]

Plaintiff's first application was denied initially and upon reconsideration (Tr. 55-56 and 59-60).  Plaintiff filed a request for an administrative hearing, which was held by Administrative Law Judge ("ALJ") James R. Russell on June 13, 2000, in Jacksonville, Florida (Tr. 777-90).  Plaintiff appeared and testified with the aid of a Spanish interpreter.[2] In a decision dated September 5, 2001, the ALJ denied Plaintiff's claim for benefits (Tr. 32-49).

The record contains a Request for Review of Hearing Decision that is dated September 13, 2001 (Tr. 65).  Also, on August 29, 2003, Plaintiff asked the Appeals Council ("AC") to review the unfavorable decision (Tr. 73-75).  The AC found good cause for the delay in requesting reconsideration (Tr. 73-75.) and took the matter up for review. By order dated July 16, 2004, the Appeals Council consolidated the two applications and remanded Plaintiff's claim back to the ALJ.  In so doing, the Appeals Council specifically ordered the ALJ to give greater consideration to Plaintiff's mental impairments, treating and examining physician statements, and residual functional capacity (Tr. 81-85).

---

[1]The Court does note, however, that one Field Office Disability Report lists Plaintiff's date last insured as December 2001 (Tr. 120), while another such report shows the date last insured as December 31, 2003 (Tr. 163).

[2]Plaintiff's primary language is apparently Spanish.  Although Plaintiff indicated in a Disability Report-Adult that she speaks and could read and write English (Tr. 124), at the June 2000 hearing she did not remember having marked those things on the report and testified that she could not read and write English (Tr. 787).  A review of the record indicates Plaintiff's daughter or son have completed some of the social security forms for her (e.g. Tr. 183, 203, 232) and accompanied her on appointments to act as interpreter (e.g. Tr. 185, 352, 425, 627).

On February 22, 2005, ALJ Russell conducted a second administrative hearing.  The Plaintiff appeared and testified through an interpreter.  Vocational expert Donna Mancini appeared and testified at the hearing (Tr. 770-75).  Plaintiff was represented by attorney Lori Gaglione during the underlying administrative phase of this case.  On June 7, 2005, ALJ Russell issued a hearing decision again denying Plaintiff's claim (Tr. 11-27).  Thereafter, the Appeals Council denied Plaintiff's request for review, making the June 2005 hearing decision the final decision of the Commissioner (Tr. 6-8).

Plaintiff's current counsel of record, Ms. Jessica Dumas, Esq., filed the instant action in Federal Court on October 25, 2005 (Doc. #1, Complaint).  The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs (Doc. #16, Plaintiff's brief and Doc. #19, Defendant's brief)[3] and the materials provided in the transcript of the underlying proceedings.

## SOCIAL SECURITY ACT ELIGIBILITY
## AND THE STANDARD OF REVIEW

Plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months.  20 C.F.R. § 404.1505.[4]  The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520.  Plaintiff bears the burden of persuasion

---

[3]Hereafter, the Court will identify Plaintiff's brief as "P's brief" and Defendant's brief as "D's brief."

[4]Unless otherwise specified, all references to 20 C.F.R. will be to the 2006 edition.

through Step 4, while at Step 5, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 11th Cir. 1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit

4

a reasonable mind to conclude that the Plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## ANALYSIS

Plaintiff is a fifty year old female with past relevant work as a machine operator in a manufacturing facility, an assistant supervisor in a packaging warehouse and a quality control assistant in manufacturing (Tr. 108, 126, 781-82).[5]  Plaintiff has a twelfth grade education, which was apparently obtained in Puerto Rico (Tr. 131, 351).  The record evidence indicates Plaintiff moved from Puerto Rico to New Jersey in 1987 (Tr. 423).  In her first Adult Disability Report, Plaintiff stated her ability to work was limited due to a heart condition that caused chest pains, headaches, tiredness and pain in her left arm (Tr. 125).  Plaintiff testified at the first administrative hearing that she had chest pain three to four times per week and had fallen into a complete depression since the death of a daughter in October 1998 (Tr. 783).  Plaintiff further testified she "could not put [her] mind on anything" and "anything could upset" her (Tr. 785).  At the second administrative hearing, Plaintiff testified she was not able to work at that time due to dizziness, pain from her right arm that was in a sling, and the depression (Tr. 754-57, 761-63).  She also stated she continued to have chest pain from her claimed heart condition (Tr. 759-60).

Plaintiff raises three issues on appeal.  First, Plaintiff asserts the ALJ committed reversible error in failing to give proper weight to the opinion of the treating physician.  Second, the Plaintiff alleges the ALJ failed to rely upon a complete and comprehensive hypothetical question.  Third, Plaintiff contends the ALJ erred as a matter of law by

---

[5]The record reflects Plaintiff was born January 27, 1957 (Tr. 108).

improperly using Plaintiff's activities of daily living to discredit her.  As an apparent catch-all, Plaintiff "avers that the [C]ommissioner's decision is not supported by substantial evidence as required by 42 U.S. section 405(g)." (P's Brief at 1).

The Court finds Plaintiff's argument as to her first issue is persuasive and, thus, this case must be remanded to the Commissioner for additional proceedings.  As will be discussed *infra*, on remand the ALJ must re-evaluate the Plaintiff's residual functional capacity in light of this ruling.  Thus, any discussion as to the hypothetical question posed to the vocational expert on February 22, 2005 would be moot.  The Court will, however, briefly address the ALJ's consideration of Plaintiff's daily activities when evaluating Plaintiff's credibility.

**Medical Opinions of Plaintiff's Treating Psychiatrist**

The Court first takes notice that a treating psychiatrist is a medical doctor whose field of specialty is that of mental diseases and other mental conditions.  A medical doctor is recognized as an acceptable medical source under the Regulations.  *See* 20 C.F.R. § 404.1513(a).  Thus, the Court finds the case law concerning the opinions of treating physicians is applicable by analogy to the opinions of treating psychiatrists.

The case law and the Regulations require the ALJ to give substantial weight to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580,583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it

6

controlling weight.  20 C.F.R. § 404.1527(d)(2).

The Eleventh Circuit has concluded "good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or, (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.  *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  An ALJ must clearly articulate his reasons for electing to disregard the opinion of a treating physician.  *Id.* at 1241.  For the Court to accept the ALJ's determination to give little weight to the treating physician, the Court must conclude that the determination was supported by substantial evidence.  *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

In this case, the ALJ did not accept: (1) the opinions of Dr. Emanuel Martinez, Plaintiff's treating psychiatrist; (2) the second opinion of Dr. J. Nicholas Prewett, a consulting psychologist; and, (3) the opinion of Dr. Peter Knox, another consulting psychologist (Tr. 23).  Further, the ALJ accepted part and disregarded part of the mental assessment of Dr. A. Alvarez-Mullin, M.D., a state agency reviewing physician (Tr. 23-24).

ALJ Russell stated he did not accept the opinions of Dr. Martinez that Plaintiff could not perform any gainful work activity on a sustained basis because these opinions were not supported by Dr. Martinez's own treatment records and the Plaintiff's daily functioning (Tr. 23).

On May 17, 2004, Dr. Martinez wrote a letter outlining his diagnoses of Plaintiff as post traumatic stress disorder, major depressive episode recurrent and severe, and panic disorder with agoraphobia.  In this same letter, Dr. Martinez also noted Plaintiff's past and

current GAF score to be 50.[6]   His assessment was that due to a combination of significant psychiatric and medical problems, Plaintiff was not competitively employable even in the most restrictive job situation.  (Tr. 548, 747).

On December 6, 2004, Dr. Martinez completed a Psychiatric Review Technique form ("PRTF") in which he assessed Plaintiff's condition from November 6, 2000 through the present date.  Dr. Martinez indicated Plaintiff suffered from affective and anxiety-related disorders and had moderate restriction of activities of daily living, marked difficulties maintaining concentration, persistence or pace, and three episodes of decompensation. Dr. Martinez marked he had insufficient evidence to evaluate Plaintiff's difficulties in maintaining social functioning. (Tr. 618-23).

On January 23, 2004, Dr. Martinez completed a Treating Source Mental Health Report on Plaintiff at the request of a Social Security adjudicator from the Office of Disability Determinations.  Therein, Dr. Martinez noted Plaintiff's mood and affect to be anxious and depressed.  He stated Plaintiff may be able to work under highly supportive, structural, supervised and repetitive work situation as long as the employer provides a beneficial amount of FMLA and sick time off for frequent medical follow-up appointments and sick days.  Dr. Martinez further indicated Plaintiff would note be able to sustain work

---

[6]The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100.  A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school functioning."  A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning.  A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

activity for eight hours a day, five days a week because of frequent periods of decompensation due to medical and psychiatric problems. (Tr. 550-51).

The record reflects Plaintiff saw Dr. Martinez on at least twenty-three occasions from November 2000 through November 2004 (Tr. 548-67, 618-26, 747).  From the onset, Dr. Martinez diagnosed Plaintiff with post traumatic stress disorder ("PTSD") and agoraphobia (Tr. 565-67).  Throughout the treatment records, Dr. Martinez notes waxing and waning of Plaintiff's mental condition.  For example, in February 2001 Dr. Martinez found that Plaintiff was doing approximately 60% better, due to having spent time in New Jersey where she reportedly feels calmer (Tr. 563), but in August 2001 Dr. Martinez noted a "significant setback" in Plaintiff's post traumatic stress syndrome with increased nightmares and trouble sleeping (Tr. 561).  Throughout the treatment period, Plaintiff was prescribed a large number of medications for her mental impairments (e.g., Tr.  552, 556, 560, 567).[7]

Dr. Martinez and other treating sources described Plaintiff as suffering from depression and anxiety (Tr. 265-68, 333-40, 423-26, 428, 463, 548-64, 568-69, 631), subject to panic attacks (Tr. 333, 353 563, 565), being easily startled, hyper-vigilant and fearful (Tr. 425, 565) and unable to tolerate being alone (Tr. 425, 565, 629).

The Court does not find the treatment records kept by Dr. Martinez to be inconsistent with the opinions he stated in the May 17, 2004 letter, the December 6, 2004 PRTF, or the January 23, 2004 Treating Source Mental Health Report.[8]

---

[7]The record also reflects a large number of prescriptions for Plaintiff's physical conditions (e.g., Tr. 178, 196, 198, 229, 428, 463, 636, 638, 646).

[8]In D's Brief, the Commissioner points out that "[a]lthough Plaintiff contends that the ALJ should have given great weight to Dr. Martinez's May 17, 2004 opinion that Plaintiff

9

The ALJ's citation to Plaintiff's daily functioning as reason to disregard the opinion of Plaintiff's treating psychiatrist is confusing.  First, this factor is outside the good cause test established in this circuit.  See *Phillips v. Barnhart,* 357 F.3d at 1240-41.  Secondly, although the ALJ correctly points to evidence in the record Plaintiff made several trips to New Jersey during the period of claimed disability, this evidence is not persuasive as to Plaintiff's ability to work.  There is no information in the record to indicate whether Plaintiff made the trips alone or with someone assisting her.  The ALJ had the opportunity to elicit this information from Plaintiff during the two administrative hearings and chose not to do so.  Further, there is information indicating at least some of the trips to New Jersey may have been therapeutic for Plaintiff (Tr. 562-63).  That said, further discussion of Plaintiff's activities of daily living in evaluation of her asserted disability is provided *infra*.

The Court is unable to find the ALJ's stated reasons for disregarding the opinions of Dr. Martinez are supported by substantial evidence.  In making this finding, the Court has declined, as it must, to re-weigh the evidence in search of support for the ALJ's determination.  Under *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), this Court now holds that the opinions of Dr. Martinez must be accepted as true as a matter of

---

had a GAF of 50, that opinion was rendered significantly <u>after</u> Plaintiff's date last insured." (D's Brief at 9) (emphasis in original). Though this statement implies the opinion is not entitled to great weight because it was given after expiration of Plaintiff's disability insurance benefits, such contention is without merit.  In *Boyd v. Heckler*, 704 F.2d 1207 (11th Cir. 1983), the court determined to adopt the position of the Second and Seventh Circuits that a treating physician's opinion "is still entitled to significant weight notwithstanding that he did not treat the clamant until after the relevant determination date." *Id.* at 1211. Here, the treating psychiatrist has a continuous record of treating Plaintiff since at least November 2000, well before Plaintiff's date last insured.  That Dr. Martinez rendered medical opinions on Plaintiff's abilities after the last insured date is not  sufficient reason to disregard or discount those opinions.

law.

**Other Medical Opinions**

While finding a November 2000 opinion of the Commissioner's examining psychologist, Dr. J. Nicholas Prewett, Ph.D., was entitled to substantial weight, the ALJ chose to disregard Dr. Prewett's more recent April 2003 opinion.  In the November 2000 exam, Dr. Prewett reported Plaintiff had an invalid MMPI-2 profile,[9] which indicated she exaggerated her symptoms and precluded him from accurately determining Plaintiff's GAF score (Tr. 352).  From that examination, Dr. Prewett determined Plaintiff had good to fair abilities in making occupational adjustments, unlimited to fair abilities in making performance adjustments, and unlimited to good abilities in making personal or social adjustments (Tr. 354-55).  As a result of the second psychological evaluation in April 2003, Dr. Prewett diagnosed Plaintiff with panic disorder with agoraphobia and a GAF of 45 (Tr. 425).  The ALJ states he disregarded Dr. Prewett's April 2003 opinion because it was highly inconsistent with what Dr. Prewett found in November 2000 and was "not substantiated by any objective medical findings" (Tr.  23).

While the second opinion may be somewhat inconsistent with the first opinion, the Court does not agree the April 2003 opinion is not substantiated by any objective medical findings.  First, Dr. Prewett's later opinion is in fact consistent with the findings of Plaintiff's treating psychiatrist, Dr. Emanuel Martinez.   Both doctors diagnosed Plaintiff with

---

[9]The "MMPI-2" is the Minnesota multiphasic personality inventory test, which is a questionnaire type of psychological test for ages 16 and over, with 550 true-false statements coded in 4 validity and 10 personality scales which may be administered in both an individual or group format.   *See* The Online Medical Dictionary at http://ww.medilexicon/com/searches/medterms.php (last visited Mar. 8, 2007).

agoraphobia and with low GAF scores.  Second, Dr. Prewett's later opinion is substantiated by numerous low GAF scores assessed by Plaintiff's various medical examiners.  The record demonstrates Plaintiff was seen by Dr. Frank Genova, M.D., from May 1999 through May 2000 (Tr. 265-68, 333-40).  Dr. Genova  found Plaintiff's functioning ability ranged from 31 to 51 on the days of the visits, with the twelve-month highest assessments ranging from 51 to 61 (Tr. 265, 266, 268, 334, 338, 339, 340).  Dr. Martinez assessed Plaintiff with a GAF of 35-38 on November 6, 2000 (Tr. 567) and a GAF of 50 on May 17, 2004 (Tr. 548).  As evidenced by these consistently low GAF scores, the mental assessments of two of Plaintiff's treating medical sources support the April 2003 evaluation of the Commissioner's examining psychologist.

Dr. Prewett examined Plaintiff on two separate occasions, both of which occurred prior to her date last insured.  The more recent April 2003 opinion is substantiated by other evidence of record.  Thus, the ALJ erred in disregarding the second opinion while affording substantial weight to the first opinion.

ALJ Russell found the opinion of Dr. Peter Knox, M.Ed., Psy. D., was not indicative of Plaintiff's mental and functional impairments because Dr. Knox did not evaluate Plaintiff until after Plaintiff's date last insured (Tr. 23).  On December 10, 2004, Dr. Knox conducted a psychological evaluation of Plaintiff's condition at the request of the Commissioner (Tr. 631).  Dr. Knox found Plaintiff was moderately impaired in her ability to understand and remember detailed instructions, and was markedly impaired in her ability to carry out detailed instructions and make judgements on simple work-related decisions (Tr. 633).  Dr. Knox further found Plaintiff was moderately to markedly impaired in her ability to interact appropriately with the public, supervisors or co-workers, and in her ability to respond

12

appropriately to work pressures and changes in routine work settings (Tr. 634).  Dr. Knox cited Plaintiff's language difficulties, her depression and feelings of helplessness and hopelessness as support for his findings (Tr. 634).  Although the ALJ may discredit a medical opinion under prevailing precedent, *see Phillips v. Barnhart,* 357 F.3d at1240-41, he may not disregard a medical opinion solely because it is rendered after the date last insured.  *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983).  Here again, the ALJ erred in his treatment of the medical opinions of record.

On remand, the ALJ must also consider the opinions of all of Plaintiff's examining and treating medical sources, as well as the opinions of non-examining medical sources, and give the proper weight to the testimony and statements of each as required by the law of this circuit.  *See generally, Lewis v. Callahan,* 125 F.3d 1436*; Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987).  If the ALJ finds reason to disregard the opinion of a treating or examining physician, psychiatrist or psychologist, he must provide specific reasons for doing so and these reasons must be supported by substantial evidence in the record.

## Plaintiff's Activities of Daily Living

Plaintiff asserts the ALJ improperly cited her activities of daily living as evidence the Plaintiff was not credible and not disabled (P's Brief at 25).  However, a careful review of the ALJ's decision reveals otherwise.  In this instance, when evaluating Plaintiff's credibility, the ALJ considered the activities of daily living to which Plaintiff testified and which Plaintiff stated to her medical sources (Tr. 18-19, 21, 23).

The Eleventh Circuit has found that participation in everyday activities of short duration, such as housework, does not disqualify a claimant from disability benefits.  *Lewis*

*v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). Thus, an ALJ may not rely solely on a claimant's activities of daily living when determining whether that individual retains the capacity for work. *See Foote v. Chater*, 67 F.3d 1553,1561 (11th Cir. 1995) (an ALJ's citation to a claimant's testimony about her daily activities is not sufficient support to disregard the claimant's statements of disabling pain). Plaintiff objects that her activities were taken out of context and do not support a denial of benefits (P's Brief at 27). Under the Regulations, however, the ALJ may consider household and social activities in evaluating claims of disabling symptoms. 20 C.F.R. § 404.1529(c)(3)(i); *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).

In general, Plaintiff appears to misinterpret the nature of the inquiry into her daily activities. Activities of daily living are not necessarily medical evidence that proves a particular residual functional capacity, but are to be considered where, as here, a claimant has subjective symptoms and the claimant's credibility is crucial to the disability determination. *See Foote v. Chater*, 67 F.3d at 1562; 20 C.F.R. § 404.1529(a),(b). Activities of daily living are not, however, a factor to consider in discrediting the medical opinion of a treating source. *See* discussion *supra*; *accord Phillips v. Barnhart,* 357 F.3d at 1240-41.

## CONCLUSION

The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. §§ 405(g). The Commissioner is directed to conduct additional proceedings in accordance with this Order and Opinion. The Clerk of the Court is directed to enter judgment consistent with this ruling and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida this __9th__ day of March, 2007.

*Thomas E. Morris*

**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to counsel of record.

15